## Berk, Appellant, *v.* LeQuin.

89

Argued April 29, 1963.   Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Milford J. Meyer*, with him *Meyer, Lasch, Hankin & Poul*, for appellants.

*James J. McEldrew*, with him *Elston C. Cole*, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, October 9, 1963:

Todd Berk, two and a half years of age, decided around noontime on November 22, 1957, to take a walk by himself.  He entered upon Andrews Avenue (Philadelphia), heading westwardly.  When he got to Ogontz Avenue, which intersects Andrews, he stopped, since Ogontz Avenue is a wide thoroughfare, accommodating two street car tracks and space for double lane automobile traffic on either side of the car tracks.  He watched a woman with a go-cart, two children, and a dog cross Ogontz and then he ventured forth.  When he reached the second traffic lane, his solitary jaunt was violently terminated by an automobile being driven by Mrs. Lillian L. LeQuin which struck him with such

force that, according to one witness, he "bounced up on the hood and bounced down."

A lawsuit followed and the jury returned a verdict in favor of the motorist defendant. The plaintiffs, the child and his parents, moved for a new trial which was refused, and an appeal to this Court followed.

The plaintiffs contend that they are entitled to a new trial because the judge improperly instructed the jury. The principal factual question at the trial was whether the child darted out into Ogontz Avenue or whether he proceeded to cross it at a normal gait. One witness, Arthur Ebischbach, testified that he saw the woman and two children cross ahead of Todd. He described the dog, which also made the crossing, as walking "casually." Todd, he said, hesitated at the curb for 30 seconds and then moved "leisurely" into Ogontz and his unintended flight over the automobile's hood.

Another witness, Eugene Pflaumer, testified that the child stopped at the curb, "hesitated" and then proceeded into the street. He did not see the actual collision.

A witness, Tillie Ellis, testified that the child hesitated at the corner and then "dashed out" into the street.

The trial judge charged the jury: "[A] driver is not bound to anticipate what a child in a place of safety, upon a sidewalk, may do, or that such a child would suddenly dart from the side of the street and run across the street immediately in front of the driver. You must determine from the evidence whether the child proceeded in a normal manner across the street as Mr. Ebischbach testified, or whether you wish to accept the testimony of Mrs. Ellis that he dashed out or darted out. But if you accept Mrs. Ellis' testimony, then you must analyze that further and determine whether in your judgment this was a case where the boy darted out suddenly from the side of the street

immediately in front of the vehicle from a place of safety, or whether he did not so dart out in a sudden manner.

*"If he darted out suddenly, you determine that, there can be no recovery, because such a situation does not present a case where a driver can be held negligent under those circumstances."* (Emphasis supplied)

The italicized portion of the charge is not the law. If a child, even imprudently and recklessly, runs out into the street and an oncoming motorist sees him, or should see him, the motorist has the duty under the law and under the most fundamental rules of humanity to make every effort to stop to avoid striking the child.

A motorist must exercise a far greater degree of care where an infant is involved than where the pedestrian has reached an age of discretion and can maneuver with mature independent judgment. A motorist cannot make fair game of children at a street intersection under the theory that one cannot be responsible for their impulsiveness. A child is what it is, and the younger the child the less sense of danger it possesses. Not only that, an infant of 2½ years is limited in vision. Its eyes are not on a much higher physical level than those of a lamb, and it is equally as defenseless as that meek animal, proverbially recognized as the symbol of helplessness.

The defendant's counsel argues in his brief that there was a parked car on the east side of Ogontz Avenue and that "All the evidence showed that the child suddenly darted out from the sidewalk in front of the parked automobile and was immediately struck by the automobile." The short answer to this statement is that "all the evidence" does *not* show that the child darted out. Moreover, any motorist nearing an intersection, encumbered by a parked automobile, is

charged with the responsibility of approaching the intersection with the care commensurate with dangers attendant upon intervening obstructions. In addition, there was evidence that the parked automobile was so far away from the intersection that it did not and could not have impeded the view of the motorist, had she been attentive.

The defendant says that: "The burden was upon the appellant to prove the driver's negligence by showing the driver had an unobstructed view."

There is no such burden on the plaintiff. He does not have to prove what was in the motorist's mind or within the reach of his senses, or if he was responding to what his senses must have reported to him. The defendant motorist is charged with using due care. This is a responsibility he cannot shed, when he sits at a wheel of an instrument of potential death and mangling injury.

The trial judge at no time modified his categorical utterance that if the child darted out "there can be no recovery." He spoke generally of the law of negligence and the caution required of motorists, but in the face of the physical facts in this case, these generalizations helped the jury as much as a description of the weather in Delaware. In view of the evidence that the boy moved "leisurely" and that he followed the woman-go-cart-children-dog procession, the judge should have charged that if the child was in view of the motorist a sufficient period of time for the motorist to stop to avoid a collision, he had the duty to do so and that, the failure to fulfill that duty, would spell out negligence. In *Derr v. Rich,* 331 Pa. 502, 505, we said: "The sole question in the case is whether the evidence indicates that the child was in the highway such a length of time before the accident occurred that the defendant in the exercise of due care should have seen him and avoided the accident. *If this be*

*true, then the rule does not here apply that drivers of automobiles are not required to anticipate that a child will suddenly run from a place of safety into the path of oncoming vehicles."* (Emphasis supplied)

The plaintiffs' attorney submitted a point for charge on this very subject, which the trial judge ignored.

Reversed with a venire facias de novo.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I dissent. The jury returned a verdict for defendant and the sole issue raised on this appeal is whether the trial judge committed prejudicial error in his charge to the jury.

The facts show that appellee's car struck the child when he was at a point in the street approximately ten feet from the curb. Both sides agree that the factual determination for the jury was "whether . . . the child was in the highway such a length of time before the accident occurred that defendant *in the exercise of due care* [a] should have seen him and [b] avoided the accident." *Flagiello v. Crilly,* 409 Pa. 389, 392, 187 A. 2d 289; *Gatens v. Vrable,* 393 Pa. 155, 142 A. 2d 287; *Derr v. Rich,* 331 Pa. 502, 505, 200 A. 599. The evidence as to how the child entered the intersection and whether a parked automobile obstructed defendant's view was conflicting, although the weight of the evidence certainly favored defendant's version of the facts. Considering the charge in its entirety and in its application to the facts which were disclosed by the testimony—as of course we must—the charge of the trial Judge was devoid of error.

I would affirm the judgment.

Mr. Justice BENJAMIN R. JONES joins in this dissenting opinion.